# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE THOMAS, | 1:10-cv-2407 BAM |
| Plaintiff, | |
| v. | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Clarence Thomas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") benefits and disability insurance benefits pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Barbara A. McAuliffe, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for benefits on August 29, 2007, claiming he is unable to work

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

due to depression and a past gunshot wound. AR 150. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). AR 12-19. ALJ Stephen Webster held a hearing and subsequently issued an order denying benefits on November 25, 2009, finding Plaintiff was not disabled. AR 12-19. This appeal followed.

**Relevant Mental Impairment Evidence**

The record is summarized here in chronological order with particular regard to the medical record relevant to Plaintiff's mental impairment claims. Nonetheless, the record as a whole was reviewed and will be specifically referenced as necessary to this Court's decision. AR 207-313.

Plaintiff first began receiving mental health treatment after his first application for social security benfits was denied. On December 4, 2007, he was seen by examining psychiatrist Shireen Damania, M.D., for a psychiatric evaluation. AR 207-11. Dr. S. Damania noted that at that time, Plaintiff was not receiving any psychiatric treatment or taking any psychotropic medications. AR 209. Dr. S. Damania also noted that Plaintiff was currently "employed," in shipping, via "temporary services." AR 208, 210. Plaintiff asked for a note for his employer, to document the medical appointment. AR 208. Dr. S. Damania recounted Plaintiff's complaints of depression and problems with his left hand due to a past gunshot wound. AR 209. At the time of the appointment, Plaintiff was "neatly dressed and groomed," with a "neatly trimmed mustache;" he denied having any suicidal or homicidal ideations. AR 210. Dr. S. Damania diagnosed a depressive disorder, alcohol abuse in remission, and polysubstance dependence in remission. AR 211. As to Plaintiff's functional limitations, Dr. S. Damania opined that Plaintiff could understand, remember, and carry out three and four-step job instructions in a work-like setting. AR 211.

On January 2, 2008, State agency psychologist J. Levinson, Ph.D., reviewed Dr. S. Damania's report. Dr. Levinson noted that Plaintiff had no history of psychological treatment. AR 224. Based on Dr. S. Damania's report, Dr. Levinson opined that Plaintiff did not have a "severe" psychological impairment. AR 212, 224.

On January 16, 2008, Plaintiff was seen by examining internist Rustom Damania, M.D., for an internal medicine evaluation. AR 226-32. At that time, Plaintiff complained of fatigue, chronic left hand pain, abdominal pain, an umbilical hernia, diarrhea, and growths ("keloid formations") on

the ear lobes. AR 227. Plaintiff reported that he had last worked on December 19, 2007. AR 228. After a physical examination, Dr. R. Damania diagnosed a bullet injury to the left hand from 1979 (now possibly mild osteoarthritis), status post laparotomy in 2001 for bullet wound (now a small umbilical hernia), intermittent diarrhea of unknown cause, and growths on both ear lobes. AR 231. As to Plaintiff's functional limitations, Dr. R. Damania opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, could stand and walk for six out of eight hours, with normal breaks. AR 232.

Also in January 2008, Plaintiff began attending the Fresno County Mental Health Facility for evaluation and treatment. AR 241, 242. On January 17, 2008, Plaintiff met with social worker Brian Arkelian and stated that he was in the process of applying for SSI and that he could not hold a job because background checks revealed that he had been in and out of jail on ten different occasions. AR 209, 249.

On February 5, 2008, State agency physician James Glaser, M.D., opined that Plaintiff did not have a "severe" physical impairment. AR 234. He noted that Plaintiff was not entirely credible because he alleged fatigue to Dr. R. Damania, but not to Dr. S. Damania, and because Plaintiff was working until December 2007, despite his claim of disability. AR 234.

On April 10, 2008, Plaintiff was evaluated by Evelyn Aquino-Caro, M.D. AR 236. Plaintiff reported that he had not worked since last year and that he was "isolating self in his room" and sleeping "with a knife under his pillow for fear of being attacked by somebody." AR 236. Dr. Aquino-Caro prescribed medications and periodic face-to-face meetings. AR 237. In a contemporaneous form prepared for State General Relief benefits, Dr. Aquino-Caro opined that Plaintiff could not work for 6 months. AR 253.

On April 28, 2008, the Fresno County Mental Health Facility noted that Plaintiff was not attending his group therapy sessions "because of some of his problems and because he is in the process of applying for his SSI." AR 275. Plaintiff was encouraged to follow up with his physician and reminded to keep appointments with his psychiatrist. AR 276.

On April 30, 2008, State agency physician E. Murillo, M.D., opined that, based on the existing medical evidence, Plaintiff did not have a severe mental impairment. AR 254. State agency

physician Brian Ginsburg, M.D., also opined that Plaintiff did not have any severe physical impairment. AR 254.

On May 10, 2008, on a form for State disability benefits, Dr. Aquino-Caro stated that Plaintiff was diagnosed with major depression versus mild psychosis and that he was on medications Lexapro and Seroquel. AR 256. She indicated that Plaintiff was incapable of performing his regular or customary work. AR 256. On July 3, 2008, Dr. Aquino-Caro saw Plaintiff for the second time. AR 268. Dr. Aquino-Caro's diagnosis was unchanged and Plaintiff's medications were adjusted.

In September 2008, it was again noted that Plaintiff "has not been able to attend groups as planned." AR 274. Dr. Aquino-Caro saw Plaintiff in September 2008, diagnosed recurrent major depression with psychotic features and adjusted his medications. AR 266.

In a January 6, 2009 form for State General Relief benefits, a social worker (signature illegible) stated that Plaintiff was "afraid to be around people, wears P.J.'s all day, freq. suicide thoughts, poor judgment, unable to remember simple instructions." AR 292. The social worker indicated that Plaintiff was unable to work through July 5, 2009, but did not indicate any specific functional limitations in the space provided. AR 292-93.

In May 2009, Dr. Aquino-Caro did not note any problems on examination, other than "anxious" mood. AR 262. Plaintiff did not appear for his next appointment with Dr. Aquino-Caro, on August 14, 2009. AR 259, 261.

**Mental Impairment Evidence Following ALJ's Decision**

After the ALJ's decision, Plaintiff requested a review of the decision and submitted additional evidence to the Appeals Council. *See* AR 294-95, et seq.

Plaintiff submitted a January 14, 2009 form for State General Relief benefits from a Marriage and Family Therapist (signature illegible). The therapist stated that Plaintiff "continues to experience chronic depression with frequent suicidal thoughts." AR 308. The therapist indicated that Plaintiff was unable to work through January 14, 2010, but did not indicate any specific functional limitations in the space provided. AR 308-09.

On a January 19, 2010 form for State General Relief benefits, a social worker (signature illegible) stated that Plaintiff had problems with "concentration and focus" and with "being with

4

people." AR 299.  The social worker indicated that Plaintiff was unable to work through July 19, 2010, but did not indicate any specific functional limitations in the space provided for explaining functional limitations.  AR 299-300.

**Hearing Testimony**

ALJ Webster held a hearing on October 6, 2009.  AR 26.  Plaintiff appeared and testified; he was assisted by attorney Melissa Proudain.  Vocational Expert ("VE") Judith Najarian also testified.  AR 22.

At the time of the hearing, Plaintiff was fifty-years old and living with his father in Fresno, California. AR 24.  Plaintiff testified that he dropped out of high school in his senior year and did not obtain a GED.  AR 27.   Plaintiff testified that he spent nine-and-a -half months in prison in 1986, that he is on welfare, and has not worked since 2007.  AR 27-29.  In the past, Plaintiff had an eighteen year problem with alcohol and cocaine addiction, but he has been sober for the last four years.  AR 34.  His past relevant work includes employment as a laborer, forklift driver, and a hand packager.  AR 18.  He last worked with a temporary agency, doing work intermittently until December 2007.  AR 27.

Plaintiff suffers primarily from depression.  AR 34.  He said that he has suicidal thoughts every day, "shut[s] down" in his room, and that he felt depressed every day.  AR 34-36.  He described problems with concentration and with socializing.  AR 38-39.  As to his daily activities, he stated that, "probably back about a year," he didn't shave, and his sister gave him "sponge bath[s]."  AR 25.  Plaintiff testified that his sister and father did the cooking and laundry and that he was able to clean up around the house and do some yard work, though he suggested that he had not been doing those things previously.  AR 25-26.  He said that he did not watch television, listen to music, read, visit friends or family, go to movies, attend church, or have any hobbies.  AR 26-27. As to his functional limitations, he said that he could stand for a "couple hours," could walk a mile, and that he did not lift anything.  AR 32, 33.

Thereafter, the ALJ elicited the testimony of vocational expert Judith Najarian.  AR 43-45. VE Najarian was asked to assume a hypothetical worker of Plaintiff's age, education, and work history with occasional problems with fine manipulation of the left major hand.  AR 43.  The

individual is also limited to jobs having three to four-step instructions. AR 43. VE Najarian indicated such an individual could perform Plaintiff's past relevant work. AR 44.

In a second hypothetical, VE Najarian was asked to consider the same individual, but the individual is unable to complete an eight-hour work day or a forty-hour work week without interruptions from psychologically based symptoms. The VE indicated such an individual could not perform Plaintiff's past relevant work or any other work as it exists in the national economy. AR 45.

### ALJ's Findings

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 12. *See 20 C.F.R. § 404.1520* (2011). More particularly, at step one, the ALJ found that Plaintiff had not worked since the alleged onset date of June 1, 2007. AR 14. At step two, the ALJ found that Plaintiff had the severe impairments of residual impairment from gunshot wound to the left upper extremity and a depressive disorder. AR 14. The ALJ found that these impairments did not meet or equal a listing at step three. AR 15.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all levels, but he is limited to work not requiring more than frequent fine manipulations or more than three-and four-step job instructions. AR 16. At step four, the ALJ subsequently found that Plaintiff could perform his past relevant work as a hand packager. AR 18-19. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 19.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[2]

**A.   Other Source Evidence**

In Plaintiff's sole argument, he contends that the ALJ should have accepted the opinions of his social workers and therapist as acceptable medical sources. (Doc. 14 at 6). The Commissioner responds that the regulations do not include clinical social workers and family therapists as acceptable medical sources and that, in any event, those opinions were conclusory, unexplained, and unsupported by objective evidence. The Court agrees with the Commissioner.

---

[2]   The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

1    Social workers are defined in the regulations as "other sources" of medical evidence and their
2    opinions are not entitled to the same weight as doctors' opinions. 20 C.F.R. § 416.913(d) (2011);
3    Social Security Ruling 06-03p, 2006 SSR LEXIS 5; *see also Thomas v. Astrue*, 2009 U.S. Dist.
4    LEXIS 5104, 2009 WL 151488, at *3 (C.D. Cal. Jan. 21, 2009) ("[T]he reports of licensed clinical
5    social workers are considered 'other sources' of evidence, not evidence from an 'acceptable medical
6    source.'"). As such, in order to discount the opinion of a social worker, an ALJ need only provide
7    reasons that are germane to the witness. *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1224
8    (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

9    The three reports at issue are (1) a January 6, 2009 form report for State General Relief
10   benefits, from a social worker (AR 292-93); (2) a January 14, 2009 form report for State General
11   Relief benefits, from a therapist (AR 308-309); and (3) a January 19, 2010 form report for State
12   General Relief benefits, from a social worker. AR 299-300.

13   At the outset, the Court notes that Plaintiff incorrectly argues that the "ALJ ignored the
14   opinions of the three social workers." (Doc. 14 at 6). Only the January 6, 2009 form report was
15   before the ALJ. *See* AR 22, (ALJ's admission of evidence only through AR 293). The subsequent
16   two reports were submitted by Plaintiff, to the Appeals Council and were not before the ALJ. AR
17   294-95. Different standards govern the review of evidence submitted to the ALJ and to the Appeals
18   Council, thus the Court will address them separately.

19   **1.    The January 6, 2009 social worker's form report submitted to the ALJ**

20   The January 6, 2009, report was prepared in connection with an application for State General
21   Relief Benefits. AR 292-293. There, the social worker stated that Plaintiff was "afraid to be around
22   people, wears P.J.'s all day, freq. suicide thoughts, poor judgment, unable to remember simple
23   instructions." AR 292. The social worker also indicated that Plaintiff was unable to work through
24   July 5, 2009, but did not indicate any specific functional limitations in the space provided. AR
25   292-93.

26   The ALJ did not expressly reject this report, but instead did not address it in his opinion. As
27   the Commissioner points out, the January 6, 2009 form report was conclusory, and did not include
28   assessments of Plaintiff's functional limitations, but simply documented Plaintiff's subjective

complaints, and a notation that Plaintiff is unable to work. While the ALJ did not discuss this report, the rational interpretation is that the ALJ intended to reject it as conclusory. In discussing an identical State General Relief form report from Dr. Aquino-Caro, the ALJ noted that the form report was a conclusory, check-box form which lacked supporting clinical findings. AR 18. An ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113(9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (stating that an ALJ need not accept even a treating source's "brief and conclusionary" opinion that lacked supporting clinical findings).

Moreover, the statements in the January 6, 2009 report directly contradict the opinions of Drs. S. Damania and Aquino-Caro. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (an ALJ may reject a lay witness's opinion if it is inconsistent with the medical evidence). Dr. Damania opined that Plaintiff could perform three and four-step instructions and noted that Plaintiff denied any suicidal ideations. AR 210-211. Dr. Aquino-Caro also noted that Plaintiff denied any suicidal ideation. AR 268.

The ALJ's reliance on Dr. S. Damania's opinion sufficiently explained his rejection of the January 6, 2009 social worker's report. That report was from a non-medical source and was contradicted by medical sources. Thus, the January 6, 2009, report was insufficient to outweigh the opinions of physicians. As such, it could not have had an effect on the outcome of the ALJ's decision.

Further the ALJ is not required to discuss every piece of evidence in the record. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990). The ALJ expressly relied on examining physician Dr. S. Damania's opinion, thus rejecting all contrary opinions. AR 18. As Dr. S. Damania was an acceptable medical source, and the unnamed social worker was not, the ALJ was free to rely on Dr. S. Damania's opinion over that of the social worker. The regulations do not require the ALJ to use the opinion of clinical social workers, over that of examining physicians. In any event, the treatment notes prepared by this social worker included no assessment of any functional limitations relating to Plaintiff's claim of depression. Therefore, the ALJ did not err by failing to discuss the January 6, 2009 social worker report.

**2.  The January 14, 2009 therapist's form report and the January 19, 2010 social worker's form report submitted to the Appeals Council**

When reviewing the Commissioner's final decision for substantial evidence, this Court is required to consider the new evidence submitted to the Appeals Council. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). In the January 14, 2009 report submitted to the Appeals Council, a family therapist stated that Plaintiff "continues to experience chronic depression with frequent suicidal thoughts." AR 308. The therapist indicated that Plaintiff was unable to work through January 14, 2010, but did not indicate any specific functional limitations in the space provided. AR 308-09. In the January 19, 2010 form report, the social worker stated that Plaintiff had problems with "concentration and focus" and with "being with people." AR 299. The social worker indicated that Plaintiff was unable to work through July 19, 2010, but did not indicate any specific functional limitations in the space provided. AR 299-300.

Courts may consider evidence submitted for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." *Brewes*, 682 F.3d at 1162-63 (noting that when the Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the additional evidence submitted to the Council); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review.").

Based on the review of the entire record, including the additional documents given to the Appeals Council, the Court finds the ALJ's decision is based on substantial evidence. Here, as with the earlier social worker's opinion, Dr. S. Damania's opinion, as to Plaintiff's mental functional limitations, constituted substantial evidence supporting the ALJ's decision. Dr. S. Damania's medical expertise and documented testing outweighed the non-medical, unsubstantiated, form reports from the therapist and social worker.

The ALJ took care in explaining his reliance on Dr. S. Damania's opinion. Specifically, the ALJ stated:

With respect to the claimant's mental functional capacity, the aforementioned

examining psychiatrist, Shireen Damania, M.D., opined that the claimant retains the capacity to understand, remember, and carry out three- and four-step job instructions in a work setting, and he is able to respond appropriately to coworkers, the public, usual work situation, and changes in a routine work setting with normal supervision. Considerable weight has been given to this opinion, which is fully consistent with the residual functional capacity finding, because Dr. Damania is a psychiatrist who had the opportunity to thoroughly examine the claimant, and her assessment is supported by detailed clinical findings and explanation.

AR 18.

Dr. S. Damania's findings were then affirmed by three separate reviewing physicians. AR 212, 224, 254. The additional evidence Plaintiff submitted to the Appeals Council does not undercut the ALJ's opinion. The reports not from acceptable sources, they were unsupported by any clinical findings, they did not include an opinion on Plaintiff's mental RFC, and they did not include a basis for their assessments. These unsupported and conclusory opinions do not rise to a level that outweighs Dr. S. Damania's well supported medical opinion. Having considered this evidence, the Court agrees with the Appeals Council that the evidence does not negate the fact that there was substantial evidence in the record to support the ALJ's decision.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Clarence Thomas.

IT IS SO ORDERED.

Dated:   September 27, 2012                         /s/ **Barbara A. McAuliffe**
                                                                        UNITED STATES MAGISTRATE JUDGE